# Alexander *v.* Soulas, Appellant.

*Contract—Exchange of corporate securities—Breach—Measure of damages—Damages—Stock transfer stamp—Taking advantage of own wrong—Act of June 4, 1915, P. L. 828.*

1. In an action for breach of contract of exchange of corporate securities, the measure of damages is the value of the securities defendant agreed to deliver to plaintiff, less the value of the securities plaintiff engaged to deliver to defendant, each being valued as of the date of the breach of the contract by defendant.

2. In such case, it is proper for the court to refuse to permit defendant to show the time, circumstances and price at which plaintiff acquired the stock he agreed to transfer to defendant.

3. An agreement for the exchange of securities does not require a stock transfer stamp as required by the Act of June 4, 1915, P. L. 828, where the contract consists of a written offer, and a verbal acceptance, and there was a breach by defendant of the contract immediately after the verbal acceptance.

4. In such case, as defendant failed to carry out his agreement, and by doing so prevented the transfer, he is not in a position to take advantage of his own wrong to defeat plaintiff's claim for damages.

Argued January 6, 1921. Appeal, No. 29, Jan. T., 1921, by defendant, from judgment of C. P. No. 1, Phila. Co., March T., 1917, No. 4236, on verdict for plaintiff, in case of A. C. Alexander, trading as Alexander & Co. *v.* G. A. Soulas. Before FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit for breach of contract to exchange corporate securities. Before PATTERSON, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $2,464. Defendant appealed.

*Errors assigned* were instructions and rulings, recited in the opinion of the Supreme Court, and refusal of defendant's motion for judgment n. o. v., quoting record.

*George J. Edwards, Jr.,* for appellant.—Defendant had a legal right to withdraw at any time prior to acceptance by plaintiff: Vincent v. Woodland Oil Co., 165 Pa. 402; Bosshardt & Wilson Co. v. Crescent Oil Co., 171 Pa. 109; East End Savings & Trust Co. v. Chadwick, 223 Pa. 70.

Plaintiff was not entitled to these bonds nor the value thereof. The contract was but an executory contract of sale, and as nothing was bought or sold by the parties, the rule as to difference in market values applies, viz: the market value of these bonds on April 10, 1917, and the market value on April 11, 1917. There was no proof of any difference in value on these days, therefore no loss was established: Hauptman v. Penna. Working Home, etc., 258 Pa. 427; Seward v. Penna. Salt Mfg. Co., 266 Pa. 457; Penna. Co., etc., v. R. R., 153 Pa. 160; Huntingdon & Broadtop R. R. v. English, 86 Pa. 247; North v. Phillips, 89 Pa. 250; Unexcelled Fire Works Co. v. Polites, 130 Pa. 536; Jones v. Jennings Bros. & Co., 168 Pa. 493; Sharpsville Furnace Co. v. Snyder, 223 Pa. 372.

The failure to prove damages entitled defendant to binding instruction in his favor, or at the worst affirmance of point for nominal damages, as indicated in Seward v. Penna. Salt Mfg. Co., 266 Pa. 457; Unexcelled Fire Works Co. v. Polites, 130 Pa. 536; Jones v. Jennings, 168 Pa. 493; Curtis v. Buzard, 254 Pa. 61; Sharp v. Levan, 236 Pa. 374.

No action on an agreement for sale of stock could be maintained where the agreement was unstamped: Johnson v. Hulings, 103 Pa. 498; Swing v. Munson, 191 Pa. 582; Chartiers, etc., Turnpike Co. v. McNamara, 72 Pa. 278; Roney v. Westlake, 216 Pa. 374.

*Thomas F. Gain,* with him *Frank A. Chalmers,* for appellee, cited: Unexcelled Fire Works Co. v. Polites, 130 Pa. 536; Kountz v. Kirkpatrick, 72 Pa. 376.

OPINION BY MR. JUSTICE FRAZER, February 21, 1921:

Plaintiff and defendant entered into negotiations for the exchange of securities owned by them respectively, and, on April 10, 1917, plaintiff prepared for defendant's signature a written proposal, as follows: "I make you the following proposition: "I will accept from you forty (40,000) thousand shares White Pine Mining Co. stock in trade and payment for one hundred (100,000) thousand shares of St. Anthony Mining Company stock, $10,-000 (par value) Hudson & Manhattan 1st & Ref. 5s, $5,000 (par value) Wilkes-Barre Coal Company, 30 yr. Coupon Bonds, due 1940. This proposition good to and including Saturday, April 14, 1917." Plaintiff took the proposal to the office of defendant who signed it and, according to plaintiff's testimony, the latter verbally accepted the offer and defendant agreed to make delivery the following day. Instead of complying with the agreement, however, defendant telephoned plaintiff he had decided not to take the stock and called the deal off, and, on the following day, April 12th, advised plaintiff in writing to that effect, confirming the telephone conversation. In the meantime, on April 11th, but after the telephone conversation in which defendant notified plaintiff of his intention not to carry out the transaction, plaintiff, by writing, confirmed his verbal acceptance of the proposition, with suggestion as to arrangement for delivery. Defendant denied the creation of a contract by a written offer and verbal acceptance as claimed by plaintiff and testified that at the time he signed the letter of April 10th it was understood to be merely a memorandum of an offer to be accepted after investigation by him of the White Pine stock, that there was no verbal acceptance of the offer as testified to by plaintiff, and that the offer was withdrawn before receipt of plaintiff's alleged written acceptance of April 11th. These questions were submitted to the jury who found in favor of plaintiff. The evidence adduced on behalf of plaintiff is sufficient to sustain the verdict and, unless there are

other matters calling for reversal, the judgment must stand.

Defendant bases his principal argument on the fact that plaintiff failed to prove damage for loss resulting from the breach of contract and was, consequently, entitled to a verdict for nominal damages only. The contention is that the agreement was but an executory contract for sale of stock and, as there was no actual transfer of property, the measure of damages was the difference between the market value of the stock plaintiff was to receive on the day the contract was entered into and its market value on the day fixed for delivery, and, inasmuch as but one day intervened and no proof of a difference in value appeared, no loss was shown. In support of this argument numerous cases are cited which apply the rule stated as governing the measure of damages for breach of contract for sale of goods. The rule is well established, but in applying it to the present case we must bear in mind the contract in question is not one of sale of goods for a cash consideration where the vendee can use his money to replace the commodities in the open market. The contract here is one of exchange of stock and plaintiff is as much entitled to whatever benefits might accrue from the agreement of sale of his own property as from the purchase of defendant's stock. In no other way could plaintiff be fully repaid for the loss sustained by reason of defendant's breach. The true measure of damages was, accordingly, properly stated by the court below as being the value of the securities defendant agreed to deliver to plaintiff, less the value of the securities plaintiff engaged to deliver to defendant, each being valued as of the date of the breach of the contract by defendant. The market value of the Hudson & Manhattan bonds was conceded to be $6,600, while the stock included in the sale from defendant to plaintiff had no established market value. There was evidence. however, of sales of White Pine Mining stock, an unlisted stock, at from five and one-quarter to six cents a

share, making a total value of $2,100 to $2,400 for the stock plaintiff undertook to deliver. On this basis the transaction resulted in a loss to plaintiff of from $4,200 to $4,500. The verdict of the jury was for $2,464, which is well within the amount they might have found, under the evidence, as plaintiff's damage.

The contention is further made that no action would lie on the contract for the reason the memorandum representing the agreement between the parties did not bear a stock transfer tax stamp, as required by the Act of June 4, 1915, P. L. 828. The tax, under section 1 of the act, is imposed "on all sales or agreements to sell or memoranda of sales of stock, and upon any and all deliveries or transfers of shares or certificates of stock ......whether made upon or shown by the books of the corporation......or by any assignment in blank, or by any delivery; or by any paper, or agreement, or memorandum, or other evidence of sale or transfer, whether intermediate or final." Under section 3, provision is made for the recording of the bill or memorandum of sale and that "no further tax is hereby imposed upon the delivery of the certificate of stock, or upon the actual issue of a new certificate, when the original certificate of stock is accompanied by the duly stamped memorandum of sale as herein provided." Section 12 provides the manner whereby "evidence of the payment of the tax" may be indicated, inter alia, first, by affixing the stamps to the stock certificate; second, by attaching to the certificate the bill or memorandum of sale with stamps attached. It thus clearly appears the intention of the act was to tax the actual transfer of stock by placing the stamp either on the stock certificate or on the agreement of sale, if for any reason a transfer was not actually made but the transfer was evidenced by a separate agreement of sale. In the present case the transaction never reached the stage of an actual transfer. There was an offer, a verbal acceptance, and a breach of the contract immediately after such acceptance. The agreement con-

templated delivery at an early date. Had the transaction been carried out, the stock transfer tax would have been payable and the proper stamps should then have been affixed to the stock certificates. As the defendant failed to carry out his agreement, and by so doing prevented the transfer, he is not in a position to take advantage of his own wrong to defeat plaintiff's claim.

Complaint is also made of the refusal of the trial judge to permit defendant to show the time and the circumstances under which plaintiff acquired the stock he agreed to transfer to defendant. Such inquiry was entirely irrelevant, it being immaterial whether plaintiff owned the stock at the time or arranged for its purchase, or whether he contemplated otherwise acquiring it in time to make delivery and perform his contract. The price at which he procured the stock was also immaterial, the only question being its fair market value.

We find no error in the various assignments and the judgment of the court below is affirmed.